IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| Lorina Mirafuentes f/k/a Lorina Bourne and Jason Troy, *as the parents and next friends of their children JT (a minor) and KT (a minor)*,<br><br>            *Plaintiffs*,<br><br>v.<br><br>Kelly Liker, Ascension Health d/b/a Dell Children's Medical Center, Bridgette K. Losey f/k/a Bridgette K. Hughes *in her individual capacity*, and Jennifer Evans *in her individual capacity*,<br><br>            *Defendants*. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§  No. 1:24-CV-00465-DAE<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ |

ORDER GRANTING MOTIONS TO DISMISS

Before the Court are three Motions to Dismiss filed by Defendants Kelly Liker (Dkt. # 72), Ascension Health d/b/a Dell Children's Medical Center ("Dell Children's") (Dkt. # 73), and Texas Department of Family and Protective Services ("TDFPS") Employees Bridgette K. Losey f/k/a Bridgette K. Hughes and Jennifer Evans ("TDFPS Employees") (Dkt. # 75).  The motions are ripe for resolution.  The Court finds this matter suitable for disposition without a hearing.

After careful consideration of the filings and the relevant law, the Court **GRANTS** the Motions to Dismiss.  (Dkts. # 72; 73; 75.)

1

BACKGROUND

Plaintiffs Lorina Mirafuentes f/k/a Lorina Bourne ("Bourne") and Jason Troy ("Troy"), as parents and next friends of their children JT (a minor) and KT (a minor) ("Plaintiffs"), have asserted two categories of claims against various Defendants.  The first category of claims arises out of JT's hospitalization at Dell Children's in May 2015.  (See Dkt. # 69 at ¶¶ 90–99.) Plaintiffs bring claims of medical negligence under Texas state law against Dr. Liker, a child abuse pediatrician, and against Dell Children's for Dr. Liker's conduct as her alleged employer and/or actual or apparent principal.  (Id. at ¶¶ 9, 70, 90–99.)  The second category of claims arises out of an allegedly arbitrary child welfare investigation into JT's medical condition which was initiated while he was a patient Dell Children's.  (See id. at ¶¶ 4, 6-7, 21–41.) Plaintiffs assert Section 1983 claims for damages against Bridgette Losey and Jennifer Evans, two employees of the Texas Department of Family and Protective Services, for violations of JT and KT's constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution.  (See id. at ¶¶ 11–12, 76, 80–89.)

As alleged by Plaintiffs, JT (born December 31, 2014) was a patient at Dell Children's when TDFPS personnel presented to the hospital to investigate the cause of JT's head injury.  (See Dkt. # 69 at ¶¶ 13, 21–22.)  Dr. Liker, a child abuse pediatrician employed by Dell Children's but allegedly

2

"consulting" and acting as an investigator for TDFPS, diagnosed JT with non-accidental trauma ("NAT"), a diagnosis of abuse.  (See id. at ¶¶ 4, 9, 69, 70, 91.)

Plaintiffs contend that this diagnosis was erroneous.  (Id. at ¶ 4.) JT, Plaintiffs explain, was born with swelling between his skull and scalp as a result of birth-related complications.  (Id. at ¶¶ 4, 20.)  Plaintiffs assert that Defendants ignored these documented medical conditions and instead concluded the swelling was indicative of shaken baby syndrome.  (See id. at ¶ 4)  According to Plaintiffs, "[a] cursory review of JT's birth records would have contradicted" this conclusion.  (Id.)  But, Plaintiffs allege, ultimately, "Defendants erroneously concluded that JT was the victim of NAT and that Lorina and Jason had abused their son."  (Id.)

Plaintiffs allege that in making this diagnosis, Dr. Liker failed to comply with the applicable professional standards published by the American Academy of Pediatrics ("AAP").  (Dkt. # 69 at ¶ 69.)  Namely, Plaintiffs allege Dr. Liker failed to physically examine JT or interview his parents prior to making her diagnosis and failed to rule out other probable causes of JT's physical symptoms and perform a competent differential diagnosis of NAT.  (Id. at ¶¶ 69, 94–95.)  Plaintiffs also assert that Dr. Liker was not qualified as a pediatrician to review the films and other birth records demonstrating that JT purportedly had preexisting symptoms from complications at birth.  (Id. at ¶ 69.)  As alleged in the Amended Complaint, these failures violated Dr. Liker's duties "to make a diagnosis that was consistent with the accepted standards of

3

medical practice," "to act with the same level of skill and competence that a reasonably skilled pediatrician would exercise under like circumstances," and "to avoid causing JT harm and to not abuse the trust between patients and physicians." (Id. at ¶¶ 69, 90–97.) Plaintiffs assert that, in breach of these duties, Dr. Liker made a diagnosis of abuse and that this diagnosis "was a proximate cause of JT's injuries and damages." (Id. at ¶ 97.) As such, Dr. Liker is liable to Plaintiffs for negligence, and as her alleged employer, Dell Children's is also liable based on "traditional agency principles." (Id. at ¶¶ 90–99.)

With respect to the TDFPS Employees, Plaintiffs assert that on May 13, 2015, while JT was at Dell Children's, a TDFPS employee, James Guyton ("Guyton"), confronted Bourne and told her that she and Troy must cooperate in an investigation into the cause of JT's head injury. (Dkt. # 69 at ¶ 22.) According to Plaintiffs, Guyton told Bourne and Troy that they had to sign a safety plan, or else their children would be removed. (Id. at ¶ 23.) Bourne and Troy signed the safety plan, which required Plaintiff Jason Troy, the father of JT and his brother KT, to move out of the home from May 13 to June 13, 2015, while other family members moved into the home to supervise the children's mother, Plaintiff Lorina Bourne, in her care of the minor children. (Id. at ¶¶ 23–25.) Plaintiffs state that they complied with the safety plan, and that when the safety plan ended on June 13, 2015, they believed their involvement with TDFPS had concluded. (Id. at ¶ 26.)

4

However, after the safety plan expired and while Plaintiffs were in Oklahoma visiting family, TDFPS Employees Losey and Evans allegedly obtained an *ex parte* court order resulting in the removal of both JT and KT from Plaintiffs' custody from July 20 through December 21, 2015. (Id. at ¶¶ 26, 34, 38–39.) Plaintiffs contend that Losey and Evans obtained the *ex parte* order "based on misrepresentations made to the court and omissions of material fact." (Id. at ¶ 35.)[1] Plaintiffs also assert that although the order authorized removal from the home, it did not authorize Losey and Evans to cross state lines and remove the children from their parents in Oklahoma. (Id. at ¶¶ 6, 36–37, 40, 71, 87–88.) These actions, Plaintiffs contend, thus constitute violations of the

---

[1] The Court takes judicial notice of the relevant state court filings, not for their factual findings or for purposes of their truth, but only for the fact that the filings were made. See Taylor v. Charter Medical Corp., 162 F. 3d 827, 830–31 (5th Cir. 1998) (a court may take judicial notice of a document filed in another court to establish the fact of such litigation and related filings); Cinel v. Connick, 15 F.3d 1338, 1343 n.6 (5th Cir. 1994) (courts may permissibly refer to matters of public record in deciding a 12(b)(6) motion without converting into one for summary judgment). The Court will also consider both the *ex parte* order and the affidavit upon which it was based in its analysis of the motions to dismiss. See In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (a court may consider documents outside the pleadings without converting the motion into one for summary judgment when the documents are (1) attached to the motion to dismiss; (2) referred to in the complaints; and (3) central to the plaintiffs' claims); Hammer v. Nodolf, 810 F. Supp. 3d 798, 802 (W.D. Tex. 2025) ("A document is central to a claim when it is necessary to establish an element of the claim."); cf. Oakley v. Dyer, No. 2:21-CV-169-Z-BQ, 2022 WL 10676593, at *6 n.8 (N.D. Tex. Sept. 12, 2022), report and recommendation adopted, No. 2:21-CV-169-Z-BQ, 2022 WL 10656143 (N.D. Tex. Oct. 18, 2022) ("[W]ithout a review of [an affidavit's] contents [a plaintiff's] conclusory assertion that omitting [information] from the affidavit would leave no basis for removal is simply conjecture.").

Fourth and Fourteenth Amendments to the United States Constitution.  (Id. at ¶¶ 80–88.)

On April 30, 2024, Plaintiffs filed suit against Defendants Kelly Liker, Dell Children's, and TDFPS Employees James Guyton, Roger Robinson, Bridgette K. Losey (f/k/a Bridgette K. Hughes), Jennifer Evans, Lisa Guyton, and Margaret Surma.  (Dkt. # 1.)  All Defendants moved to dismiss, and on July 23, 2025, this Court granted the various motions.  (Dkt. # 68.)[2]  However, noting that Plaintiffs had not yet amended their Complaint and that it was not clear this was a situation in which further amendment would be futile, the Court

---

[2] Specifically, the Court (1) dismissed Plaintiffs' § 1983 claim against Dr. Liker for violation of JT's Fourth Amendment rights, finding that Plaintiffs failed to sufficiently allege Dr. Liker was a state actor for purposes of § 1983; (2) dismissed Plaintiffs' professional negligence claim against Dr. Liker because this claim was in reality a health care liability claim and Plaintiffs failed to allege facts supporting the elements of such a claim; (3) held that Plaintiffs' claims against Dr. Liker must also be dismissed under § 261.106 of the Texas Family Code; (4) dismissed the claims brought on KT's behalf against Dr. Liker because the Complaint lacked allegations related to KT; (5) found that Plaintiffs failed to specify a legal theory that would form the basis of an award of punitive damages against Dr. Liker; (6) dismissed Plaintiffs' claim for declaratory and injunctive relief against Dell Children's for lack of subject matter jurisdiction; (7) dismissed Plaintiffs' professional negligence claim against Dell Children's as the claims against the employee, Dr. Liker, had been dismissed; (8) dismissed any claims brought against TDFPS Employees in their official capacities; (9) dismissed any claims against Margaret Surma and Lisa Guyton for lack of standing; (10) dismissed Plaintiffs' claims against Roger Robinson because supervisory officials are not liable for the actions of subordinates on any theory of vicarious liability; (11) dismissed Plaintiffs' First and Fourteenth Amendment claims as the wrong sources of the constitutional rights at issue in this case; and (12) dismissed Plaintiffs' Fourth Amendment claim against James Guyton because they did not sufficiently plead a constitutional violation related to alleged coercion.  (Dkt. # 68.)

granted Plaintiffs leave to amend their complaint to address the deficiencies identified in the Court's order.  (Id. at 27.)  Plaintiffs filed an Amended Complaint on August 22, 2025, (Dkt. # 69), and Defendants Kelly Liker, Dell Children's, and TDFPS Employees Bridgette K. Losey and Jennifer Evans again moved to dismiss.  (Dkts. ## 72; 73; 75.)

LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  When analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).  The court "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  Funk v. Stryker Corp., 631 F.3d 777, 783 (5th Cir. 2011) (quoting Tellabs Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

7

draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

A complaint need not include detailed facts to survive a Rule 12(b)(6) motion to dismiss. See Twombly, 550 U.S. at 555–56. In providing grounds for relief, however, a plaintiff must do more than recite the formulaic elements of a cause of action. See id. at 556–57. "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," and courts "are not bound to accept as true a legal conclusion couched as a factual allegation." Iqbal, 556 U.S. at 678 (internal quotations and citations omitted). Thus, although all reasonable inferences will be resolved in favor of the plaintiff, the plaintiff must plead "specific facts, not mere conclusory allegations." Tuchman v. DSC Commc'ns Corp., 14 F.3d 1061, 1067 (5th Cir. 1994); see also Plotkin v. IP Axess Inc., 407 F.3d 690, 696 (5th Cir. 2005) ("We do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions.").

When a complaint fails to adequately state a claim, such deficiency should be "exposed at the point of minimum expenditure of time and money by the parties and the court." Twombly, 550 U.S. at 558 (citation omitted). However, the plaintiff should generally be given at least one chance to amend the complaint under Rule 15(a) before dismissing the action with prejudice. Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co., 313 F.3d 305, 329 (5th Cir. 2002).

DISCUSSION

I.    Motion to Dismiss by Dr. Kelly Liker

In their Amended Complaint, Plaintiffs bring one claim for medical negligence against Dr. Liker.  (Dkt. # 69 at 22.)  Under Texas law, "[t]he elements of a medical negligence claim are: (1) a duty to conform to a certain standard of care; (2) a failure to conform to the required standard; (3) actual injury; and (4) a causal connection between the conduct and the injury." Petersen v. Johnson, 57 F.4th 225, 236 (5th Cir. 2023) (quoting Methodist Hosp. v. German, 369 S.W.3d 333, 338 (Tex. App. — Houston [1st Dist.] 2011, pet. denied)).  Dr. Liker argues that Plaintiffs' medical negligence claim must be dismissed because (1) Plaintiffs fail to sufficiently allege the elements of injury and causation; and (2) Plaintiffs fail to allege facts that overcome Dr. Liker's entitlement to statutory immunity.  (Dkt. # 72 at 6.)  The Court will address each argument in turn.

A.    Injury and Causation

First, Dr. Liker contends that the Amended Complaint fails to state a claim against her because it does not allege facts sufficient to support the injury and causation elements of a medical negligence claim.  (Dkt. # 72 at 6.) The Court agrees.

In their Amended Complaint, Plaintiffs allege that Dr. Liker owed JT duties "to make a diagnosis that was consistent with the accepted standards of medical practice," "to act with the same level of skill and competence that a

9

reasonably skilled pediatrician would exercise under like circumstances," and "to avoid causing JT harm and to not abuse the trust between patients and physicians." (Dkt. # 69 at ¶¶ 69, 93.) Plaintiffs further describe how Dr. Liker allegedly breached those duties: by failing to interview JT's parents, by failing to conduct a physical examination of JT before making the diagnosis, and by failing to perform a competent differential diagnosis. (Id. at ¶¶ 69, 93–95.) However, the Amended Complaint is entirely devoid of allegations supporting the elements of injury and causation. (See generally, Dkt. # 69.) It does not state what actual injuries or damages JT sustained, nor does it describe what injuries Plaintiffs attribute to Dr. Liker's acts or omissions. Rather, the Amended Complaint merely states without more that Dr. Liker's "diagnosis was a proximate cause of JT's injuries and damages." (Id. at ¶ 97.) This statement is conclusory and plainly inadequate. See Iqbal, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

In their response, Plaintiffs contend that they "alleged that Dr. Liker was a cause of JT's removal from his parents." (Dkt. # 77 at 1.) But the Amended Complaint contains no such statement, and Plaintiffs cannot amend their complaint via their response to add such a statement now. See In re Enron Corp. Sec., Derivative & ERISA Litig., 761 F. Supp. 2d 504, 566 (S.D. Tex. 2011) ("[I]t is axiomatic that a complaint cannot be amended by briefs in opposition to a motion to dismiss.").

10

Plaintiffs also argue that the allegations in the Amended Complaint "establish that Dr. Liker was a substantial factor in JT's removal from his parents and that it was reasonably foreseeable that Dr. Liker's diagnosis of abuse would result in such removal," but again, the Court disagrees.  (Dkt. # 77 at 3.)  In support of their argument, Plaintiffs list in their response various allegations included in the Amended Complaint regarding Dr. Liker's acts and omissions.  (See id.)  As to causation, however, the only citation they provide is the conclusory statement that "Dr. Liker was a proximate cause of JT's injuries and damages."  (Id.)[3]  As already explained, this statement does not suffice.

Here, as previously stated, the Amended Complaint is entirely silent regarding what injuries and damages JT sustained and what injuries are attributed to Dr. Liker's conduct specifically.  In other words, Plaintiffs fail to articulate a causal link between Dr. Liker's actions (e.g., her diagnosis of NAT) and an injury to JT.  As such, as Dr. Liker points out, it is unclear whether Plaintiffs contend that Dr. Liker's acts or omissions caused injuries separate and apart from those injuries allegedly caused by the TDFPS Employees or whether they contend that Dr. Liker caused the same injuries attributed to the TDFPS

---

[3] In support of injury, Plaintiffs cite to a line in their Amended Complaint stating: "[this] action arises out of an arbitrary investigation of child abuse, the unreasonable search and seizure of JT and KT, the unlawful removal of JT and KT, and the continued withholding of JT and KT from their parents long after any probable cause for their removal dissipated."  (Dkt. # 77 at 3, citing Dkt. # 69 at ¶ 76.)  But, as with the other allegations in the Amended Complaint, this statement does not at all evince what injuries are attributed to Dr. Liker specifically, rather than the other defendants.  (See Dkt. # 69 at ¶ 76.)

Employees' conduct.  It is also unclear *how* Dr. Liker's acts or omissions caused injury to JT.  See IHS Cedars Treatment Ctr. of DeSoto, Texas, Inc. v. Mason, 143 S.W.3d 794, 799 (Tex. 2004) (providing that the cause-in-fact element of proximate causation "is not established where the defendant's negligence does no more than furnish a condition which makes the injuries possible").  Plaintiffs have therefore failed to state a claim for medical negligence against Dr. Liker and that claim must be **DISMISSED**.  See Southland Sec. Corp. v. INSpire Ins. Sols., Inc., 365 F.3d 353, 361 (5th Cir. 2004) (noting that even when accepting the facts alleged as true and construing them in the light most favorable to the plaintiff, the Court will not "strain to find inferences favorable to the plaintiffs" and will not "accept conclusory allegations, unwarranted deductions, or legal conclusions"); see also Allen v. Walmart Stores, L.L.C., 907 F.3d 170, 178 (5th Cir. 2018) ("Dismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." (cleaned up)).

B.    Statutory Immunity

Dr. Liker also contends she is entitled to statutory immunity with respect to Plaintiffs' medical negligence claim.  (Dkt. # 72 at 8.)  Under § 261.106 of the Texas Family Code, "[a] person acting in good faith who reports or assists in the investigation of a report of alleged child abuse or neglect . . . is immune from civil or criminal liability that might otherwise be incurred or imposed."  In its prior order, this Court applied § 261.106 to Plaintiffs' professional negligence claim against Dr. Liker—which it found to be

12

a health care liability claim as a matter of law—and held that the claims against Dr. Liker must also be dismissed under that provision. (Dkt. # 68 at 15–16.) The parties now dispute whether § 261.106 applies to Plaintiffs' newly pleaded medical negligence claim.

For her part, Dr. Liker asserts that, under the Court's prior order, § 261.106 applies. Accordingly, because Plaintiffs failed to allege any facts capable of overcoming Dr. Liker's § 261.106 immunity (i.e., a lack of good faith), the claim against her must be dismissed. (Dkts. ## 72 at 8–12; 79 at 4–8.) Plaintiffs, on the other hand, argue that (1) § 261.106 is inapplicable to this claim because Plaintiffs do not allege that Dr. Liker reported abuse to TDFPS; (2) § 261.106 is an affirmative defense and therefore is not properly raised in a Rule 12(b)(6) motion; and (3) even if § 261.106 applies, Plaintiffs have sufficiently alleged Dr. Liker's lack of good faith. (Dkt. # 77 at 4–6.) The Court finds Plaintiffs' arguments largely unpersuasive, but, for the reasons described below, will not dismiss Plaintiffs' medical negligence claim on this basis at this time.[4]

In their original complaint, Plaintiffs brought a claim for professional negligence against Dr. Liker, alleging that Dr. Liker breached her

---

[4] As described in the previous section, the Court has already dismissed Plaintiffs' medical negligence claim against Dr. Liker for failure to state a claim. Nonetheless, because the Court is affording Plaintiffs one final opportunity to amend their complaint, it includes the following discussion for the parties' awareness.

13

duty of loyalty, duty to disclose conflicts of interest, and duty to obtain informed consent by, *inter alia*, "failing to disclose her contractional relationship with [TDFPS]," "failing to disclose that she was serving [TDFPS] in a forensic capacity," and "failing to disclose that she was investigating allegations of abuse or neglect, as opposed to diagnosing or treating disease." (Dkt. # 1 at 24.) Ruling on Dr. Liker's first motion to dismiss, the Court held that this claim was in reality a health care liability claim because the allegations brought by Plaintiffs were "inseparable from the rendition of health care services." (Dkt. # 68 at 11–13.) The Court then went on to find that, with respect to this claim, Dr. Liker was protected by § 261.106 immunity, and because Plaintiffs failed to allege facts showing Dr. Liker did not act in good faith, the claim must be dismissed. (Id. at 15–16.)

Although Plaintiffs argue that § 261.106 immunity does not apply to their new claim of medical negligence, the Court sees no principled reason to treat this claim—a health care liability claim—differently than Plaintiffs' previous health care liability claim. See Rice v. Pfizer, Inc., No. 3:06-CV-0757-M, 2006 WL 1932565, at *1 n.1 (N.D. Tex. July 7, 2006) ("In Texas, a cause of action against a health care provider for negligence is a health care liability claim"); Clark v. TIRR Rehab. Ctr., 227 S.W.3d 256, 259 (Tex. App. — Houston [1st Dist.] Mar. 15, 2007, no pet.) ("If the cause of action is based on a breach of the standard of care by a healthcare provider, then the claim is a health care liability claim, without regard to how it is labeled."); see also TEX. FAM.

14

CODE § 261.109(a-1) ("A person who is a professional as defined by Section 261.101(b) commits an offense if the person is required to make a report under Section 261.101(b) and knowingly fails to make a report as provided in this chapter.").

Plaintiffs argue that this claim is distinct because they have not alleged that Dr. Liker reported abuse to TDFPS and instead allege only that Dr. Liker "misdiagnosed abuse." (Dkt. # 77 at 4.) While the Court appreciates that § 261.106 immunity may not apply to acts separate and apart from the reporting of child abuse and assisting in the investigation of child abuse, see State v. Harrod, 81 S.W.3d 904, 908 (Tex. App.—Dallas July 10, 2002, pet. ref'd) ("If the legislature intended for immunity to apply to acts other than those specified in section 261.106, the legislature did not specify how far that immunity was to reach. An interpretation that the legislature intended to protect persons who report child abuse from being civilly or criminally liable for any act or omission committed by them in the past, present, or future would be absurd[.]"), Plaintiffs' assertion that their claim is unrelated to the reporting of abuse is belied by their earlier representations. For example, in response to Dr. Liker's argument that Plaintiffs failed to sufficiently allege injury and causation, Plaintiffs asserted that "Dr. Liker was a cause of JT's removal from his parents," that "Dr. Liker was a substantial factor in JT's removal from his parents," and that "it was reasonably foreseeable that Dr. Liker's diagnosis of abuse would result in such a removal." (Dkt. # 77 at 1, 3.) Plaintiffs also contended in their

15

response (but not in their Amended Complaint) that the TDFPS Employees took actions "based on Dr. Liker's arbitrary investigation and diagnosis of abuse." (Id. at 5.)  These representations reveal that Plaintiffs' theory of liability is grounded in Dr. Liker's *report* of suspected abuse to TDFPS.  To claim otherwise in an effort to avoid § 261.106 immunity is inconsistent with these representations, and the Court declines to credit such an argument.

However, as argued by Plaintiffs, § 261.106 immunity is an affirmative defense.  Drew v. Belver, No. 04-20-00483-CV, 2021 WL 3518541, at *7 (Tex. App. — San Antonio Aug. 11, 2021, rev. denied) (stating immunity under § 261.106 is an affirmative defense).  "Ordinarily a motion to dismiss cannot be granted based on an affirmative defense . . . because a plaintiff need not anticipate and negate potential affirmative defenses."  Dawson v. Air Transp. Int'l, Inc., No. 5:20-CV-894-DAE, 2021 WL 2425998, at *3 (W.D. Tex. Feb. 23, 2021).  But, if the complaint itself establishes the applicability of an affirmative defense, dismissing under Rule 12(b)(6) may be appropriate.  See Fisher v. Halliburton, 667 F.3d 602, 609 (5th Cir. 2012); see also EPCO Carbon Dioxide Prods., Inc. v. JP Morgan Chase Bank, NA, 467 F.3d 466, 470 (5th Cir. 2006) ("Although dismissal under rule 12(b)(6) may be appropriate based on a successful affirmative defense, that defense must appear on the face of the complaint.").

Here, as discussed in the prior section, the Amended Complaint does not clarify what injury or injuries Plaintiffs attribute to Dr. Liker's conduct

specifically, nor does it clarify how Dr. Liker's conduct caused those injuries.

In other words, the Amended Complaint itself does not establish whether Dr.

Liker's liability is premised on the fact that she reported her diagnosis to

TDFPS or assisted in TDFPS' investigation, which would plainly implicate

§ 261.106 immunity, or whether it is based on conduct separate and apart from

such acts.[5]  Although Plaintiffs' response clearly suggests that Dr. Liker's

liability is indeed premised on Dr. Liker's report and/or assistance, the Amended

Complaint lacks these allegations.  The Court therefore concludes that, as

currently pleaded, the defense of § 261.106 immunity does not appear on the

face of the Amended Complaint and dismissal on this basis is thus not

appropriate at this time.  See Fisher, 667 F.3d at 609; EPCO, 467 F.3d at 470.[6]

---

[5] This is distinct from Plaintiffs' original complaint, which, on the face of the complaint, sought to hold Dr. Liker liable for her assistance in TDFPS' investigation.  (See Dkt. # 1 at 24 (asserting that Dr. Liker breached duties owed to JT by failing to disclose that she was investigating allegations of abuse and failing to disclose all material facts related to her child abuse investigation).)

[6] The Court also notes that, were § 261.106 immunity to apply, Plaintiffs have failed to sufficiently plead Dr. Liker's lack of good faith.  The Court agrees with Dr. Liker that the allegations contained in the Amended Complaint amount to no more than an assertion that Dr. Liker's diagnosis was erroneous and that her investigation was faulty, allegations that fall well short of the standard.  See Chaney v. Corona, 103 S.W.3d 608, 611 (Tex. App. — San Antonio Feb. 28, 2003, pet. denied) (noting that, to establish good faith, the person reporting child abuse must only show that a reasonably prudent person under the same or similar circumstances could have believed that the report of abuse was justified based on information known at the time); Telthorster v. Tennell, 92 S.W.3d 457, 465 (Tex. 2002) (negligence does not defeat good faith because the inquiry involves what a reasonable person could have believed, not what a reasonable person would have done).  Should Plaintiffs choose to amend their complaint once more and should Plaintiffs include a claim that implicates § 261.106

Nevertheless, because the Court has already determined that Plaintiffs failed to sufficiently plead two required elements of their medical negligence claim against Dr. Liker, this claim is dismissed.

II.     Motion to Dismiss by Dell Children's

Plaintiffs next bring a claim for medical negligence against Defendant Dell Children's, premised on agency principles.  (Dkt. # 69 at 23.) Because the Court has dismissed Plaintiffs' negligence claim against Dr. Liker, it must also dismiss the negligence claim against Dell Children's.  See Johnson v. Sawyer, 47 F.3d 716, 730 (5th Cir. 1995) ("Respondeat superior does not impose liability on the employer unless the employee's conduct has been actionable.").[7]  Accordingly, Plaintiffs' medical negligence claim against Dell Children's is also **DISMISSED**.

_____

immuntiy on the face of their second amended complaint, Plaintiffs must address this deficiency.

[7] Even if the Court did not dismiss the claim against Dr. Liker, the Court would still dismiss the claims against Dell Children's because Plaintiffs have failed to allege facts sufficient to establish that Dell Children's is vicariously liable for Dr. Liker's alleged acts or omissions.  See Baptist Mem'l Hosp. Sys. v. Sampson, 969 S.W.2d 945, 947–48 (Tex. 1998) (explaining that, under the doctrine of respondeat superior, an employer is vicariously liable for the negligence of an employee acting within the scope of his employment, but not for the actions of independent contractors, and noting that "[a] hospital is ordinarily not liable for the negligence of a physician who is an independent contractor"); St. Joseph Hosp. v. Wolff, 94 S.W.3d 513, 542 (Tex. 2002) (the right to control, namely whether the employer has the right to control the means and methods of the employee's work, is the primary test for determining the employer-employee relationship); Brown v. Montgomery Cnty. Hosp. Dist., 905 S.W.2d 481, 484 (Tex. App. — Beaumont Aug. 31, 1995, no writ) ("[A] physician is generally considered to be an independent contractor with regard to hospitals at which a physician has staff privileges."); Coleman v. Klockner &

18

III.    Motions to Dismiss by TDFPS Employees

Finally, Plaintiffs bring claims pursuant to 42 U.S.C. § 1983 against TDFPS Employees, Bridgette Losey f/k/a Bridgette K. Hughes ("Losey") and Jennifer Evans ("Evans") in their individual capacities for violations of Plaintiffs' Fourth and Fourteenth Amendment rights.  (Dkt. # 69 at 18, 21–22.)  Losey and Evans argue that Plaintiffs' claims must be dismissed because (1) the Fourteenth Amendment claims were brought well outside the applicable statute of limitations; (2) Plaintiffs fail to sufficiently plead a Fourth Amendment claim; and (3) qualified immunity bars all remaining claims.  (Dkt. # 75 at 5.)

"Section 1983 creates a private right of action for redressing violations of federal law by those acting under color of state law." Olabisiomotosho v. City of Hous., 185 F.3d 521, 525 (5th Cir. 1999) (citing Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 82 (1984)); see 42 U.S.C. § 1983.  The statute "is not itself a source of substantive rights; it merely provides a method for vindicating federal rights conferred elsewhere."

---

Co. AG, 180 S.W.3d 577, 588 (Tex. App. — Houston [14th Dist.] Aug. 18, 2005, no pet.) ("The critical element of an agency relationship is the right to control, and the principal must have control of both the means and details of the process by which the agent is to accomplish his task in order for an agency relationship to exist . . . Absent proof of the right to control the means and details of the work performed, only an independent contractor relationship is established.").  More precisely, Plaintiffs' Amended Complaint contains no allegations that Dell Children's had the right to control the means, details, and methods of Dr. Liker's practice of medicine, and accordingly, Plaintiffs' claim against Dell Children's fails even if Plaintiffs' claim against Dr. Liker survived.

Olabisiomotosho, 185 F.3d at 525 (citing Albright v. Oliver, 510 U.S. 266, 271 (1994)).  To prevail on a § 1983 claim, "a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law."  Doe ex rel. Magee v. Covington Cnty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012) (quoting James v. Tex. Collin Cnty., 535 F.3d 365, 373 (5th Cir. 2008)).

When public officials are sued in their individual capacities under § 1983, "[q]ualified immunity shields [them] from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  Santander v. Salazar, 133 F.4th 471, 478 (5th Cir. 2025) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)).  Because qualified immunity is an immunity from the burdens of defending a suit, when a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an "obligation to carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery."  Longoria Next Friend of M.L. v. San Benito Indep. Consol. Sch. Dist., 942 F.3d 258, 263–64 (5th Cir. 2019) (cleaned up); see also A.W. v. Humble Indep. Sch. Dist., 25 F. Supp. 3d 973, 1004 (S.D. Tex. 2014), aff'd sub nom. King-White v. Humble Indep. Sch. Dist., 803 F.3d 754 (5th Cir. 2015).

20

At the motion to dismiss stage, "'it is the plaintiff's burden to demonstrate that qualified immunity is inappropriate.'" Santander, 133 F.4th at 478 (quoting Guerra v. Castillo, 82 F.4th 278, 285 (5th Cir. 2023)) (cleaned up). "However, 'an assertion of qualified immunity . . . does not subject the complaint to a heightened pleading standard.'" Id. (quoting Arnold v. Williams, 979 F.3d 262, 267 (5th Cir. 2020)). Rather, to meet their burden, the plaintiff must plead "specific facts" showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. Arnold, 979 F.3d at 267; al-Kidd, 563 U.S. at 735. A right is clearly established for purposes of the second step of the qualified-immunity analysis if it would be clear to every reasonable official, at the time of the challenged conduct, that his or her conduct violated the statutory or constitutional right at issue. al-Kidd, 563 U.S. at 741 (citing Anderson v. Creighton, 483 U.S. 635, 640 (1987)). "At the motion-to-dismiss stage, it is "the defendant's conduct *as alleged in the complaint* that is scrutinized for 'objective legal reasonableness.'" Nunn v. Converse Police Dep't, No. SA-24-CV-00935-FB, 2025 WL 2946187, at *5 (W.D. Tex. May 22, 2025), report and recommendation adopted, No. SA-24-CV-935-FB, 2025 WL 2673904 (W.D. Tex. Sept. 17, 2025) (quoting McClendon v. City of Columbia, 305 F.3d 314, 323 (5th Cir. 2002)) (emphasis in original). The question of whether an official's conduct was objectively reasonable in light of clearly established law is a matter of law for the courts to determine. Goodson v. City of Corpus

21

Christi, 202 F. 3d 730, 736 (5th Cir. 2000).  The court may consider the two prongs of the qualified immunity analysis in any order.  Morgan v. Swanson, 659 F. 3d 359, 384–85 (5th Cir. 2011) (en banc) (noting that the court need not consider both prongs if one or the other is dispositive).  But, as the Fifth Circuit recently cautioned, at the motion to dismiss stage, the court "must do no more than determine whether the plaintiff has filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone."  Santander, 133 F.4th at 478 (internal quotations and citation omitted, cleaned up).

### A.    Fourteenth Amendment Claims

Defendants Losey and Evans argue that, to the extent Plaintiffs intend to bring Fourteenth Amendment claims on their own behalf, those claims are time barred.  (Dkt. # 75 at 12 (citing Price v. City of San Antonio, 431 F.3d 890, 892 (5th Cir. 2005) and TEX. CIV. PRAC. & REM. CODE § 16.003(a)).)  Further, to the extent Plaintiffs intend to bring Fourteenth Amendment claims on behalf of their children, Plaintiffs invoke the wrong source of constitutional support.  (Id. at 13.)  In their response, Plaintiffs concede these points and ask that all references to the Fourteenth Amendment be stricken from the Amended Complaint.  (Dkt. # 83 at 7–8.)  Accordingly, Plaintiffs' Fourteenth Amendment claims are **DISMISSED**.

### B.    Fourth Amendment Claims

Plaintiffs also assert that Lovey and Evans unlawfully removed JT and KT from their family in violation of the children's Fourth Amendment

22

rights.  (See Dkt. # 69 at 21–22.)  The Fourth Amendment protects against unreasonable searches and seizures.  U.S. Const. amend IV.  It is "well established" in the Fifth Circuit that the Fourth Amendment regulates social workers' civil investigations and protects against the unreasonable seizures of children from their homes.  Banks v. Herbrich, 90 F.4th 407, 412 (5th Cir. 2024).  In the context of the removals of children, the Fifth Circuit has held that "the government may not seize a child from his or her parents absent a court order, parental consent, or exigent circumstances."  Gates v. Texas Dep't of Protective & Regul. Servs., 537 F.3d 404, 429 (5th Cir. 2008).

In this case, Plaintiffs contend that Lovey and Evans violated the Fourth Amendment by removing the boys from their parents while they were in Oklahoma.  (See Dkt. # 69 at 21–22.)  Although Plaintiffs acknowledge that Lovey and Evans possessed an *ex parte* order, they argue that the order did not authorize Defendants to cross state lines because it only authorized removal from the home.  (Id.)  Therefore, Plaintiffs assert, Defendants violated clearly-established law prohibiting removal of a child from his parents absent a court order.  (Dkt. # 83 at 4.)

Upon its review of the Amended Complaint, the *ex parte* order,[8] and the relevant law, the Court finds that Plaintiffs have failed to allege a

---

[8] As noted above, the Court may consider the *ex parte* order in its analysis of the motion to dismiss without converting the motion into one for summary judgment.  In re Katrina, 495 F.3d at 205.

23

plausible constitutional violation.  First, the Court sees no merit in Plaintiffs' unsupported claims that the *ex parte* order did not authorize Lovey and Evans to remove JT and KT from their parents in Oklahoma.[9]  (See generally Dkt. # 83; see also Dkt. # 69 at ¶¶ 6, 34–40, 71, 84–88.)  To the contrary, the order gave temporary managing conservatorship of the children to TDFPS and awarded TDFPS the right to physical possession of the children.  (Dkt. # 75 at 27–29 (*Ex Parte* Order)); see TEX. FAM. CODE § 262.102.  The order did not confine TDFPS' authority, as contended by Plaintiffs, to removal from "the home." (See id.); cf. D.F. v. Texas Dep't of Fam. & Protective Servs., 393 S.W.3d 821, 830 (Tex. App. — El Paso Nov. 7, 2012, no pet.), abrogated on other grounds by In re E.C.R., 402 S.W.3d 239 (Tex. 2013) (rejecting argument that the Texas Family Code requires that the child be physically removed from the parent's care and concluding that "[c]hildren are removed from their parents under Chapter 262 for the abuse or neglect of a child where the children may have been physically in the care of a relative, a medical or social services institution, or the Department.").  Nor did the order confine TDFPS' authority to removals executed in Texas.  (See Dkt. # 75 at 27–29); TEX. FAM. CODE § 262.102; Okla. Stat. tit. 43, § 551-303 (providing that, in Oklahoma, all courts are required to

---

[9] The Court is not required to credit Plaintiffs' proffered legal conclusion that Losey and Evans had no legal right or authorization to remove the children in Oklahoma.  See Santander, 133 F.4th at 481; (Dkt. # 69 at ¶ 6.)  Indeed, here, Plaintiffs provide no legal authority for their assertions and those assertions are in fact contradicted by the relevant statutes, caselaw, and the *ex parte* order itself.

24

"recognize and enforce a child custody determination of a court of another state if the latter court exercised jurisdiction in substantial conformity with this act"). The Court therefore rejects Plaintiffs' arguments to this effect.

Second, to the extent Plaintiffs argue that the *ex parte* order was not valid because it was issued by a Travis County court, that argument is similarly unfounded. While Plaintiffs are correct that § 262.002 of the Texas Family Code *allows* TDFPS to file the case in the county where the child is found, it does not *require* TDFPS to do so. See TEX. FAM. CODE § 262.002 ("A suit brought by a governmental entity requesting an order under this chapter *may* be filed in a court with jurisdiction to hear the suit in the county in which the child is found." (emphasis added)); id. at § 152.201 (providing that a court has jurisdiction to make an initial custody determination if the state is the home state of the child or was the home state of the child within the past six months, and noting that physical presence of the child is not necessary to make a custody determination); cf. In Int. of D.W., 533 S.W.3d 460, 465 (Tex. App. — Texarkana Mar. 31, 2017, no pet.) (noting that a court exercising jurisdiction under Chapter 262 *shares* jurisdiction with a court exercising continuing, exclusive jurisdiction under Chapter 155). Thus, TDFPS properly filed their case in Travis County, see TEX. FAM. CODE § § 152.201; (Dkt. # 69 at ¶ 27 (noting that the family was had not moved to Oklahoma but was merely "visit[ing]" family in Oklahoma)), and the Court finds no support for Plaintiffs'

25

assertions to the contrary.  Accordingly, the Court also rejects any argument on this basis.

Finally, insofar as Plaintiffs intend to assert that the order was not valid because it was predicated on misrepresentations and omissions, the Court finds that Plaintiffs have not sufficiently pleaded such a claim.  It is clearly established law in the Fifth Circuit that "a constitutional violation occurs if an official makes a knowing, intentional, or reckless false statement or omission that causes the issuance of a warrant without probable cause that leads to the removal of a child from its parent's custody."  McCullough v. Herron, 838 F. App'x 837, 843–44 (5th Cir. 2020) (citing  Franks v. Delaware, 438 U.S. 154, 155–56 (1978); see Marks v. Hudson, 933 F.3d 481, 487 (5th Cir. 2019) ("There is a constitutional violation if an affiant knowingly and intentionally, or with reckless disregard for the truth, includes in an affidavit a false statement that is necessary to the finding of probable cause, and that affidavit results in the issuance of a warrant that leads to a search or seizure."); see also Davis v. Strain, 676 F. App'x 285, 287 (5th Cir. 2017) ("[W]hen an affidavit contains inaccurate statements which materially affect its showing of probable cause, any warrant based upon it is rendered invalid.").

In their Amended Complaint, Plaintiffs allege that Losey and Evans "obtained an *ex parte* order from the Travis County Court for the removal of the children based on misrepresentations made to the court and omissions of material fact and knowing that the children were in Oklahoma."  (Dkt. # 69 at

26

¶ 35.)  They further allege that Losey "obtained the *ex parte* order from the Travis County Court knowing Plaintiffs were not in Travis County and that they were in Oklahoma," that Evans "directed [Losey] to obtain an *ex parte* order based on misrepresentations and omissions of fact and contrary to the requirements of the UCCJEA," and that Losey and Evans "knew the children were not in Travis County when Ms. Losey submitted her affidavit in support of the *ex parte* removal." (Id. at ¶¶ 71, 75, 86.)

Based on these allegations and the Amended Complaint as a whole, it appears to the Court that, rather than intending to assert a Franks-type violation, Plaintiffs simply intend to bolster their claim that the *ex parte* order did not grant Defendants authority to remove the children from their parents in Oklahoma.  (See id. at ¶¶ 81–88.)  The Court has already rejected this argument, and these allegations do not affect the Court's analysis on this issue.  To the extent, however, that Plaintiffs did intend to assert a Franks violation, the allegations contained in the Amended Complaint are insufficient.  Although Plaintiffs make multiple references to facts allegedly known to Losey and Evans, they do not once specify which facts were allegedly omitted from or misrepresented in the affidavit, nor do they assert that the omission of these facts alters the probable cause analysis or renders the order invalid.[10]  As the

_____

[10] Indeed, although Plaintiffs' principal complaint appears to be with the alleged omission of the children's location in Oklahoma, the affidavit does not omit this fact.  (See Dkt. # 76-1 at 1 (referencing children's current address in Oklahoma), 2 (noting that the children are temporarily staying in Oklahoma));

27

foregoing discussion suggests, due to the absence of these allegations, the Court is unable to discern exactly what constitutional violation(s) Plaintiffs are trying to assert.  Accordingly, as currently pleaded, the Amended Complaint does not sufficiently allege a Franks-type claim.  See Leonard v. Hooda, No. 4:23-CV-00534-P-BJ, 2023 WL 8756339, at *3 (N.D. Tex. Dec. 19, 2023) (dismissing claim where the complaint "fails to connect the dots" as to the cause of action asserted); Ekpenyong v. Deutsche Bank Nat'l Tr. Co., No. SA-10-CV-910XR, 2010 WL 11652156, at *1 (W.D. Tex. Dec. 29, 2010) (granting motion to dismiss when the defendant and the Court were "left to guess" as to the theory of recovery); Southland Securities, 365 F.3d at 361 (noting that the court "will not strain to find inferences favorable to the plaintiffs").

Therefore, because Plaintiffs have not sufficiently pleaded a violation of JT and KT's Fourth Amendment rights based either on a Franks violation or removal in the absence of a court order or exigent circumstances, the Court **DISMISSES** Plaintiffs' Fourth Amendment claims.

IV.     Leave to Amend

Courts should freely grant leave to amend when justice so requires. FED. R. CIV. P. 15(a)(2).  Courts should deny leave to amend when amendment

---

In re Katrina, 495 F.3d at 205.  And while the Amended Complaint also refers to several other facts allegedly known to Losey and Evans at the time they submitted the affidavit, (see Dkt. # 69 at ¶¶ 6–7, 30, 33–34), Plaintiffs do not assert that these facts were omitted from or misrepresented in the affidavit, nor do they seem to refer to these allegations in their cause of action, (see id. at ¶¶ 81–88).

would cause undue delay or undue prejudice to the opposing party, or the amendment would be futile or in bad faith.  <u>Mayeaux v. La. Health Serv. & Indem. Co.</u>, 376 F. 3d 420, 425 (5th Cir. 2004).  An amendment is futile if it would fail to survive a Rule 12(b)(6) motion.  <u>Marucci Sports, L.C.C. v. Nat'l Collegiate Athletic Ass'n</u>, 751 F. 3d 386, 378 (5th Cir. 2014).  A court should not dismiss a complaint with prejudice "unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so."  <u>Hart v. Bayer Corp.</u>, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

In this case, with respect to Plaintiffs' claims against Dr. Liker and Dell Children's, the Court does not find that amendment would clearly be futile.  Indeed, many of the deficiencies identified in this order as to these claims could very easily be overcome upon more careful or detailed drafting of the complaint.  And, although Plaintiffs have been afforded one prior opportunity to amend their complaint, the Court does consider that single amendment to constitute "repeated opportunities."  Accordingly, Court will permit Plaintiffs one final opportunity to address the deficiencies identified in this Order as it relates to their claims against Dr. Liker and Dell Children's.  <u>See Bauer v. AGCO Corp.</u>, 770 F. Supp. 3d 957, 962 (W.D. Tex. 2025) ("[W]hen it appears a more careful or detailed drafting might overcome the deficiencies on which dismissal is sought, a Court must allow a plaintiff the opportunity to amend the Complaint."); <u>Hitt v. City of Pasadena</u>, 561 F.2d 606, 608 (5th Cir. 1977) ("It is

29

the well-established policy of the federal rules that the plaintiff is to be given every opportunity to state a claim. As this court has often stated, a complaint is not subject to dismissal unless 'it appears to be a certainty that the plaintiff cannot possibly be entitled to relief under any set of facts which could be proved in support of its allegations. Even then, a court ordinarily should not dismiss the complaint except after affording every opportunity (for) the plaintiff to state a claim upon which relief (can) be granted.'"). Failure to do so will result in a dismissal with prejudice.

However, with respect to Plaintiffs' § 1983 claims, the Court finds that amendment would be futile. See Marks, 933 F.3d at 489–90 (after reconstructing the affidavit with the alleged omissions, determining that the affidavit still includes statements supporting the existence of an immediate danger to the child, and thus finding no Fourth Amendment violation); (Dkt. # 75-1 (including an admission by Troy that he shook the baby and the baby then fainted, discussing the medical affidavit of Dr. Liker who concluded that J.T.'s condition was most consistent with abusive head trauma and the history of being shaken rather than an underlying medical condition, and noting that J.T. was being seen by doctors in Oklahoma but not by doctors qualified to conduct J.T.'s post-surgery examinations and that J.T. has not received proper follow-up medical care to date); see also Tuchman, 14 F.3d at 1067 (providing that courts will not accept "unwarranted deductions of fact" in a motion to dismiss). Therefore, the Court will dismiss these claims with prejudice. See Bauer, 770 F.

30

Supp. 3d at 962 ("A court may appropriately dismiss an action with prejudice without giving an opportunity to amend if it finds the plaintiff alleged his best case or if amendment would be futile.")

CONCLUSION

For the reasons above, Defendants' Motions to Dismiss are **GRANTED**. (Dkts. ## 72; 73; 75.) Plaintiffs' claims against Defendants Dr. Liker and Dell Children's are **DISMISSED WITHOUT PREJUDICE**. Plaintiffs are granted 30 days to file a second amended Complaint addressing the deficiencies identified in this Order with respect to these claims. Failure to do so will result in a dismissal with prejudice. Plaintiffs' claims against Defendants Losey and Evans, however, are **DISMISSED WITH PREJUDICE**.

**IT IS SO ORDERED**.

**DATED**: Austin, Texas, July 13, 2026.

_____
David Alan Ezra
Senior United States District Judge

31